IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

BIOSIGNIA, INC., )
)
        Plaintiff, )
)
v. ) 1:12CV1129
)
LIFE LINE SCREENING OF )
AMERICA, LTD. and )
INTERNATIONAL DATA )
MANAGEMENT, )
)
        Defendants. )

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the court on Defendant International Data Management's ("IDMI") motion to dismiss for failure to state a claim (Docket Entry 57) and Defendant Life Line Screening of America, Ltd.'s ("Life Line") motion for judgment on the pleadings. (Docket Entry 68.) Both motions have been fully briefed and the matter is ripe for disposition. For the reasons that follow, it is recommended that Defendant IDMI's motion be granted in part and denied in part, and that Defendant Life Line's motion be granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

BioSignia, Inc. ("Plaintiff" or "BioSignia") began this action by filing its complaint on October 22, 2012, alleging breach of contract and tort causes of action against Life Line and Health Improvement Solutions, Inc. ("HIS"). In response to the complaint, HIS filed a motion to dismiss. (Docket Entry 15.) Through this motion, BioSignia learned of IDMI's involvement, and subsequently filed a motion for leave to file an amended complaint to, *inter*

*alia*, add IDMI as a defendant. (Docket Entry 24.) On June 11, 2013, Plaintiff also filed a motion for a preliminary injunction. (Docket Entry 33.) A hearing was held on July 17, 2013. At the hearing, the motion to amend was granted by oral order of the Court. (*See* Minute Entry 2, 07/17/2013.) On July 22, 2013, the undersigned filed a memorandum opinion and recommendation, recommending that Plaintiff's motion for a preliminary injunction be denied. (Docket Entry 46.) This recommendation was later adopted by the district court by order dated August 15, 2013. (Docket Entry 52.)

On August 7, 2013, Plaintiff filed an amended complaint against three defendants: Life Line, HIS and IDMI.[1] (Docket Entry 48.) In the amended complaint, Plaintiff asserts the following claims against both Life Line and IDMI: (1) breach of contract, (2) breach of duty of good faith and fair dealing, (3) unfair and deceptive trade practices, (4) tortious interference with contract, and (5) tortious interference with economic advantage. Additionally, Plaintiff, in its tenth cause of action, seeks a declaratory judgment against Life Line to establish BioSignia's rights and Life Line's responsibilities under the contract between the parties.

According to the allegations of the complaint, BioSignia is a leader in the development and creation of advanced risk assessment solutions and developed the "first multiple disease health risk assessment ("HRA") product and service." (Am. Compl. ¶¶ 11, 14.) In June 2000, BioSignia obtained two United States patents and one copyright in connection with its health risk assessment product, "Know Your Number" ("KYN"). (*Id.*

---

[1] On August 12, 2013, Plaintiff filed a Notice of Voluntary Dismissal as to HIS. (Docket Entry 50.)

¶¶ 15-16.) KYN provides information on an individual's health risk factors and focuses attention to those risks that can be improved. (*Id.* ¶ 17.)

Life Line, a Florida company, began offering basic health screening services in 1993, including vascular ultrasound screening and biometric testing for cholesterol and glucose. In 2008, Life Line approached BioSignia regarding a potential distribution relationship between the parties. (*Id.* ¶ 31.) The parties entered into an initial Mutual Non-Disclosure Agreement ("NDA") in June 2008. (*Id.* ¶ 34.) In November 2009, Life Line and BioSignia entered into a new Mutual Confidential and Non-Disclosure Agreement ("Agreement"). (*Id.* ¶ 67.) It is this contract which Plaintiff alleges is at issue in this case. (*Id.* ¶ 7.)

Under the Agreement, Plaintiff maintained ownership of its intellectual property, Life Line was required to maintain the confidentiality of Plaintiff's information, Life Line was prohibited from reverse engineering Plaintiff's technology to develop competitive technology, and Life Line agreed that any products created by Life Line which were derivative of BioSignia intellectual property would become the property of BioSignia. (*Id.* ¶¶ 70-76.)

Life Line's distribution of BioSignia's KYN product was very successful, as the product "provide[d] a health risk assessment on multiple diseases and chronic illness at one time with an output report specifically designed to motivate lifestyle changes." (*Id.* ¶ 78.) Accordingly, as alleged in the complaint, Life Line "embarked on a plan to use the information it had already acquired from BioSignia, and acquire additional information from BioSignia, to reverse engineer, copy and otherwise develop a derivative work of BioSignia's KYN in order to wrongfully compete with BioSignia." (*Id.* ¶ 86.)

Also, in 2010 BioSignia partnered with the television show "The Biggest Loser" to provide the KYN health assessment to contestants and viewers of the show. (*Id.* ¶ 58.) On December 16, 2009, in order to serve the patients from the show, BioSignia entered into a Services Agreement ("IDMI Services Agreement") with IDMI under which IDMI would receive and process patient data and ultimately build a marketing data warehouse for BioSignia at IDMI. (*Id.* ¶ 60.) This agreement contained a confidentiality provision by which both parties agreed that "all matters between the parties, including pricing and other proprietary information of IDMI" shall be confidential and not disseminated to any third parties. (*Id.* ¶ 61.) The IDMI Services Agreement remains in effect. (*Id.*)

BioSignia alleges that Life Line hired Health Improvement Services, Inc. ("HIS") to develop an HRA specifically for Life Line. The HRA developed by HIS and used by Life Line is called "6 For Life." (*Id.* ¶ 113.) Plaintiff also alleges that Life Line used information that it and IDMI had wrongfully obtained from BioSignia in developing the "reverse engineered derivative of BioSignia's KYN." (*Id.* ¶ 119.) According to Plaintiff, this use and sharing of BioSignia's information constitutes a material breach of the agreements between BioSignia and Life Line and IDMI. (*Id.* ¶ 121.) Further, BioSignia alleges that because 6 For Life is a derivative product of KYN, under the Agreement, BioSignia is entitled to ownership of 6 For Life. (*Id.* ¶ 165.) Additionally, BioSignia alleges that the conduct of Life Line and IDMI in obtaining BioSignia's trade secrets and intellectual property under false pretenses so as to reverse engineer a competitive product amounted to unfair and deceptive trade practices in violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1(a). (*Id.* ¶¶ 103-112, 240-48.)

## II. STANDARD OF REVIEW

### A. Motion for Judgment on the Pleadings (Rule 12(c))

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). In resolving a motion for judgment on the pleadings, the court must accept all of the non-movant's factual allegations as true and draw all reasonable inferences in its favor. *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002). Judgment on the pleadings is warranted where the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. *Id.* The court may consider the complaint, answer, and any materials attached to those pleadings or motions for judgment on the pleadings "so long as they are integral to the complaint and authentic." *Philips v. Pitt Cnty Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Unlike a Rule 12(b)(6) motion, the court may consider the answer as well in deciding a Rule 12(c) motion. *Alexander v. City of Greensboro*, 801 F. Supp. 2d 429, 433 (M.D.N.C. 2011).

Although a motion for judgment on the pleadings pursuant to Rule 12(c) is separate and distinct from a Rule 12(b)(6) motion to dismiss, federal courts apply the same standard in considering both motions. *Independence News, Inc. v. City of Charlotte*, 568 F.3d 148, 154 (4th Cir. 2009); *Burbach*, 278 F.3d at 405-06; *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).

### B. Failure to State a Claim (Rule 12(b)(6))

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. *Edwards*, 178 F.3d at 243. A complaint that does not "contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face'" must be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct." *Id.*; *see also Simmons & United Mortg. & Loan Invest.*, 634 F.3d 754, 768 (4th Cir. 2011) ("On a Rule 12(b)(6) motion, a complaint must be dismissed if it does not allege enough facts to state a claim to relief that is *plausible* on its face.") (emphasis in original) (internal citation and quotation marks omitted). The "court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words, the standard requires a plaintiff to articulate facts, that, when accepted as true, demonstrate the plaintiff has stated a claim that makes it plausible he is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678, and *Twombly*, 550 U.S. at 557).

## III. DISCUSSION

### A. IDMI Motion to Dismiss

*1. Breach of Contract (Third Cause of Action)*

IDMI argues that Plaintiff has failed to properly plead all elements to sustain a breach of contract claim as required to survive a 12(b)(6) motion to dismiss. In North Carolina, the elements for a breach of contract claim are (1) the existence of a valid contract and (2) a

breach of the terms of that contract. *See, e.g. Guessford v. Pa. Nat. Mut. Cas. Ins. Co.*, 918 F. Supp. 2d 453, 460 (M.D.N.C. 2013). BioSignia and IDMI both acknowledge the existence of the contract between the two parties; indeed, IDMI attached the IDMI Services Agreement as an exhibit to its memorandum in support of the motion to dismiss. (Def. Mem. Supp. Mot. to Dismiss, Ex. A, Docket Entry 58-1.) Plaintiff alleges that under the Agreement, IDMI was prohibited from sharing BioSignia's information without the prior written permission of BioSignia, and that BioSignia in fact never gave IDMI permission to disclose or share any of its information with third parties. (Am. Compl. ¶¶ 123-24.) Plaintiff then alleges that IDMI disclosed BioSignia's confidential information to third parties, such as Life Line and HIS and that this disclosure constituted a material breach of the Agreement. (Am. Compl. ¶¶ 128; 232.) Additionally, Plaintiff alleges that IDMI used the confidential material it obtained to reverse engineer KYN to produce a similar, competitive product. (*Id.* ¶ 232.) Taking these allegations as true, as this court must under the 12(b)(6) standard, Plaintiff has stated a sufficient claim for a breach of contract.

  2. *Breach of Duty of Good Faith and Fair Dealing (Fourth Cause of Action)*

In its fourth cause of action, Plaintiff alleges that IDMI has acted in bad faith by failing to act in the best interests of BioSignia pursuant to the Agreement. (Am. Compl. ¶¶ 234-239.) "In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." *Williams v. Craft Dev., LLC*, 199 N.C. App. 500, 682 S.E.2d 719, 723 (2009) (internal quotation marks and citation omitted). Where the claim for breach of good faith is "part and parcel" of a similar claim for breach of an express term of the contract claim, that

claim will rise and fall with the other breach of contract claim. *Shalford v. Shelley's Jewelry, Inc.*, 127 F. Supp. 2d 779, 787 (W.D.N.C. 2000) (quoting *Murray v. Nationwide Mut. Ins. Co.*, 123 N.C. App. 1, 472 S.E.2d 358, 368 (1996)). Because the covenant of good faith and fair dealing is an implied term, it cannot be used to contradict the express terms of a contract. *Rich Food Servs., Inc. v. Rich Plan Corp.*, 98 F. App'x 206, 211 (4th Cir. 2004) (unpublished) (citing *Campbell v. Blount*, 24 N.C. App. 368, 371, 210 S.E.2d 513, 515 (1975)). This understanding conforms to the central purpose of the implied duty of good faith, which is to allow enforcement of a vague or incomplete agreement that the ratifying parties intended to be binding, but that lacks certain terms essential to proper contract formation. *See Ultra Innovations, Inc. v. Food Lion, Inc.*, 130 N.C. App. 315, 317, 502 S.E.2d 685, 687 (1998). In these cases, the duty of good faith provides the missing terms of the agreement that necessarily flow from the parties' intentions, thus allowing enforcement of the contract. *Id.*

In seeking dismissal of this claim, IDMI argues that "Plaintiff cannot even demonstrate that a garden-variety breach of contract has occurred here. The Plaintiff has not and cannot establish the factual predicates to permit this cause of action to go forward (assuming North Carolina even recognizes such a claim)." (IDMI Mem. Supp. Mot. to Dismiss at 13, Docket Entry 58.) As discussed above, however, BioSignia has sufficiently alleged its breach of contract claim. However, although some courts in North Carolina have considered good faith and fair dealing claims separate from breach of contract claims, *see, e.g.*, *Eli Research, Inc. v. United Commc'ns Grp., LLC*, 312 F. Supp. 2d 748, 761 (M.D.N.C. 2004), the weight of North Carolina authority holds that a claim for breach of the covenant of good faith and fair dealing based on facts identical to those supporting a breach of contract claim

should not be pursued separately. *See, e.g., Shelley's Jewelry*, 127 F. Supp. 2d at 787; *Mech. Indus. v. O'Brien/Atkins Assocs., P.A.*, No. 1:97CV99, 1998 U.S. Dist. LEXIS 5389, at *11 (M.D.N.C. Feb. 4, 1998) (noting that North Carolina recognizes a separate cause of action for breach of good faith and fair dealing only in limited circumstances involving special relationships between the parties, such as cases involving funeral services and insurance contracts). Since Plaintiff's allegations of breach of the duty of good faith and fair dealing center on alleged breaches of express contract terms, these claims rise and fall with the underlying claims for breach of contract. Therefore, Plaintiff's separate cause of action for breach of the covenant of good faith and fair dealing should be dismissed as duplicative of its breach of contract claim. Plaintiffs may still assert theories of breach of good faith in support of its claims for breach of contract. *See Performance Sales & Mktg., LLC v. Lowes Cos.*, No. 5:07CV140, 2010 WL 2294323, at *11 (W.D.N.C. June 4, 2010).

### 3. Unfair and Deceptive Trade Practices (Fifth Cause of Action)

Plaintiff also alleges that IDMI's actions violate the North Carolina Unfair and Deceptive Trade Practices Act (the "UDTPA"). N.C. GEN. STAT. § 75-1.1. Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are unlawful in North Carolina under this statute. To state a claim for an unfair or deceptive trade practice under the North Carolina UDTPA, a plaintiff must show that (1) the defendant committed an unfair or deceptive act or practice (2) that was in or affecting commerce and (3) proximately caused injury. *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001); *South Atl. Ltd. P'ship of Tenn., L.P. v. Riese*, 284 F.3d 518, 535 (4th Cir. 2002). An act or practice is unfair "if it is immoral, unethical, oppressive, unscrupulous,

9

or substantially injurious to consumers," and is deceptive "if it has the capacity or tendency to deceive." *Ace Chem. Corp v. DSI Transp., Inc.*, 115 N.C App. 237, 247, 446 S.E.2d 100, 106 (1994) (internal citations and quotations omitted). Thus, there are two ways in which a plaintiff can prove or prevail on an UDPTA claim: (1) make the UDTPA claim standing separate and apart from a breach of contract claim, or (2) make the UDTPA claim based upon a breach of contract accompanied by "[s]ubstantial aggravating circumstances[.]" *Suntrust Bank v. Bryant/Stutphin Props.*, 732 S.E.2d 594, 599 (N.C. App. 2012).

BioSignia alleges several acts by Defendants which it claims support an UDTPA claim: Life Line and IDMI obtained BioSignia's trade secrets, intellectual property and business models under false pretenses; Life Line and IDMI obtained the alleged protected information for the "specific purpose of developing [a] reverse engineered knockoff" product; Life Line employed the services of a third party agent (HIS) specifically to aid in reverse engineering and developing the knock off product, 6 for Life; and Life Line and IDMI "wrongfully and deceptively violated the terms of their agreements with BioSignia" in developing, through reverse engineering, Life Line's 6 for Life product. (*See* Am. Compl. ¶ 242.) IDMI argues that BioSignia's UDTPA claim should be dismissed because Plaintiff has not "allege[d] with any level of specificity which acts by IDMI were 'oppressive' and 'substantially injurious' and that the allegations at best represent a simple breach of contract claim which is prohibited under Chapter 75. (IDMI Mem. at 14, Docket Entry 58.)

Under North Carolina law, a mere breach of a contract cannot sustain a UDTPA claim without a showing of "substantial aggravating circumstances." *Griffith v. Glen Wood Co.*, 184 N.C. App. 206, 217, 646 S.E.2d 550, 558 (2007). Even an intentional breach of contract

does not fall within the purview of Chapter 75. *Bob Timberlake Collection, Inc. v. Edwards*, 176 N.C. App. 33, 42, 626 S.E.2d 315, 323 (2006). Generally, the type of conduct that has been found sufficient to constitute a substantial aggravating factor has involved forged documents, lies, and fraudulent inducements. *See, e.g., Garlock v. Henson*, 112 N.C. App. 243, 246, 435 S.E.2d 114, 115-16 (1993) (finding forgery of a bill of sale and three years of lies to deprive plaintiff of money owed under a contract sufficient to sustain a UDTPA claim); *Foley v. L&L Int'l, Inc.*, 88 N.C. App. 710, 714, 364 S.E.2d 733, 736 (1988) (holding UDPTA claim sufficient where defendant retained plaintiff's down payment for seven months while falsely claiming it had ordered the vehicle and that it would be delivered shortly); *Mapp v. Toyota World, Inc.*, 81 N.C. App. 421, 426, 344 S.E.2d 297, 301, review denied, 318 N.C. 283, 347 S.E.2d 464 (1986) (holding breach of promise made to fraudulently induce contract sufficient to sustain a UDTPA claim). However, where the only acts alleged are themselves a breach of the contract between the parties, they will not support a UDTPA claim. *See Branch Banking & Trust Co., v. Thompson*, 107 N.C. App. 53, 62, 418 S.E.2d 694, 700, review denied, 332 N.C. 482, 421 S.E.2d 350 (1990) (affirming summary judgment against UDTPA counterclaim where bank's allegedly wrongful release of deed of trust constituted a breach of the note and loan agreement with the borrower). As cautioned by the Fourth Circuit, it is inappropriate to allow a boilerplate UDTPA claim to "piggyback" on a contract claim. *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 347 (4th Cir. 1998) (finding that '[g]iven the contractual center of this dispute, plaintiffs' [UDTPA] claims are out of place").

BioSignia alleges that the conduct of IDMI alleged in Plaintiff's UDTPA claim is separate from the allegations of the breach of contract claim. Specifically, Plaintiff alleges

that IDMI misused confidential information (*see* Am. Compl. ¶¶ 110, 112, 242) and reverse engineered or assisted Life Line and/or HIS to reverse engineer a competitive product. (*Id.* ¶¶ 88-166; 242.) A review of the specific allegations in the UDTPA cause of action, however, shows that all of the acts alleged as to IDMI flowed from the terms of the contract itself. Accordingly, because Plaintiff has not pled any independent, substantial aggravating circumstances, IDMI's motion to dismiss should be granted.

### 4. *Tortious Interference with Contract and Prospective Economic Advantage (Sixth and Seventh Causes of Action)*

BioSignia alleges that it had a valid contract with Life Line which prohibited Life Line from distributing any information obtained from BioSignia, and that IDMI knew, or should have known, about the agreement. (Am. Compl. ¶¶ 251-52.) BioSignia further alleges that IDMI (and HIS) intentionally induced Life Line to breach the contract by "intentionally obtaining BioSignia's information from Life Line in order to develop a reverse engineered knockoff product." (*Id.* ¶ 253.) In its seventh cause of action, BioSignia alleges that it had a business relationship with Life Line and a reasonable expectation that this relationship would continue into the future. (*Id.* ¶¶ 258-59.) BioSignia alleges that the actions of IDMI "directly resulted in BioSignia's loss of business opportunities with Life Line, potential customers, and other third parties." (*Id.* ¶¶ 260-61.) Thus, Plaintiff asserts claims for tortious interference with contract and for tortious interference with prospective advantage.

The elements of a *prima facie* case of tortious interference with contract are:

> (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to the plaintiff.

*Holleman v. Aiken*, 193 N.C. App. 484, 500, 668 S.E.2d 579, 589-90 (2008) (quotation and citation omitted). A tortious interference with prospective economic advantage claim has the same elements except that instead of an existing contract, there must be a contract that would have been entered into but for the defendant's conduct. *Beck v. City of Durham*, 154 N.C. App. 221, 232, 573 S.E.2d 183, 191 (2002).

IDMI contends that Plaintiff has failed to allege any facts that support a conclusion, or even an inference, that IDMI intentionally induced Life Line to breach and abandon its contract with BioSignia. (IDMI Mem. at 16, Docket Entry 58). The court disagrees. At this stage of the proceeding, Plaintiff is not burdened with the task of proving its claim; Plaintiff need only allege facts which make its claim plausible. Plaintiff has done so. Among other allegations, Plaintiff alleges that BioSignia and Life Line were parties to an Agreement under which Life Line was to keep BioSignia's information confidential and which specifically prohibited Life Line from reverse engineering BioSignia's proprietary information for the purpose of designing or developing competitive technology or products. (*See* Am. Compl. ¶¶ 64-72; 194-99; 250-51.) BioSignia alleges that IDMI knew of the contract and that IDMI was engaged by Life Line to "manage some or all of the data created in its servicing of its contract(s) with BioSignia." (*Id.* ¶¶ 54-57.) Plaintiff also alleges that even though IDMI knew of BioSignia and Life Line's business relationship to license KYN, "IDMI used [its] relationship with BioSignia to gain access to additional information regarding KYN in order to facilitate Defendants' reverse engineering of a competitive product." (*Id.* ¶ 89.) By using its relationship with BioSignia to gain access to information regarding KYN, Plaintiff alleges, IDMI enabled the reverse engineering of KYN, thus allowing Life Line to replace KYN

with its derivative product. (*Id.* ¶ 253.) BioSignia further alleges that IDMI not only breached its contract with BioSignia, but also engaged in unfair and deceptive trade practices and that no justification existed for its conduct. BioSignia alleges that its KYN revenue under the agreement dropped over 80% in a one month period in 2011 as a result of the reverse engineered knockoff product and that ultimately Life Line solely used its own product, 6 For Life, which Plaintiff alleges is the knock-off of KYN, while still referencing KYN in its marketing materials. (*Id.* ¶¶ 162-66.) These assertions sufficiently allege the elements of a tortious interference with contract claim under North Carolina law.

The court finds, however that Plaintiff has not sufficiently stated a claim for tortious interference with prospective economic advantage. To prove a claim for tortious interference with prospective economic advantage, a plaintiff must show that the defendant acted without justification in "inducing a third party to refrain from entering into a contract with them which contract would have ensued but for the interference." *Cameron v. New Hanover Mem'l Hosp., Inc.*, 58 N.C. App. 414, 440, 293 S.E.2d 901, 917 (1982). Thus, a plaintiff asserting a claim for tortious interference with prospective economic advantage must first identify the contract that the defendant induced a third partry to refrain from entering. *DaimlerChrysler Corp. v. Kirkhart*, 148 N.C. App. 572, 585, 561 S.E.2d 276, 286 (2002). Here, Plaintiff alleges that IDMI interfered with Plaintiff's existing contract with Life Line, but Plaintiff does not identify with specificity any future contracts. In fact, Plaintiff merely alleges that IDMI's actions "directly resulted in BioSignia's loss of business opportunities with potential customers and other third parties." This allegation is too speculative to support a claim, nor is Plaintiff's mere expectation of future contracts with

Life Line sufficient to state a claim for tortious interference with prospective advantage. Thus, this court finds that Plaintiff has not sufficiently alleged facts which make its tortious interference with economic advantage claim plausible under *Iqbal/Twombly*.[2]

IDMI also argues that the economic loss rule bars Plaintiff's tort claims. Under the economic loss rule, in general, a breach of contract claim will not support the assertion of tort claims as well. *Schumacher Immobilien Und Beteiligungs AD v. Prova, Inc.*, No. 1:09CV18, 2010 WL 2867603, at *8 (M.D.N.C. Jul. 21, 2010) ("It is well settled under North Carolina law that a mere breach of contract cannot sustain claims sounding in tort."), M&R adopted, 2010 WL 3943754 (M.D.N.C. Oct. 7, 2010); *Kelly v. Georgia-Pacific LLC*, 671 F.Supp.2d 785, 791 (E.D.N.C. 2009); *N.C. State Ports Auth. v. Lloyd A. Fry Roofing Co.*, 294 N.C. 73, 81, 240 S.E.2d 345, 350 (1978) ("Ordinarily a breach of contract does not give rise to a tort action by the promisee against the promisor."), *rejected in part on other grounds by Trs. of Rowan Tech. Coll. v. J. Hyatt Hammond Assoc.*, 313 N.C. 230, 242, 328 S.E.2d 274, 281 (1985). In North Carolina, tort claims which arise out of breach of contract claims are allowed only in "carefully circumscribed" circumstances. *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 346 (4th Cir. 1998). Thus, in order to assert a tort and breach of contract claim arising from the same conduct, a plaintiff must allege a duty owed by the defendant that is separate and distinct from duties owed pursuant to the contract. *Vanwyk Textile Sys., B.V. v. Zimmer Mach. Am., Inc.*, 994 F. Supp. 350, 362 (W.D.N.C. 1997). Not only must the tort constitute an

---

[2] The court is unpersuaded by IDMI's argument that BioSignia's seventh cause of action should be dismissed because it does not contain the word "prospective" in its subheading. Courts have recognized this cause of action in different contexts where different words were used to name the cause of action. It is clear from the pleading and its context that BioSignia is alleging a claim for tortious interference with prospective economic advantage.

identifiable, "independent tort," *see Strum v. Exxon Co., U.S.A.*, 15 F.3d 327, 330 (4th Cir. 1994), but the "tort also must have an aggravating element, such as fraud, malice, reckless indifference, oppression, insult, and willfulness." *Schumaker*, 2010 WL 3943754, at *2 (internal quotations omitted).

IDMI argues, in a somewhat conclusory fashion, that Plaintiff's tort claims are subject to dismissal under the economic loss rule. IDMI contends that because each of Plaintiff's tort claims "stem from its contract with IDMI, the [e]conomic [l]oss [r]ule prevents recovery." (IDMI Reply at 4, Docket Entry 66.) However, North Carolina courts, in applying the economic loss rule, have generally focused on the availability of a contractual remedy, particularly in product liability cases. The relief sought by Plaintiff under its remaining tort claim is different from, and additional to, what it seeks for breach of contract. BioSignia alleges acts of IDMI both within the scope of IDMI's servicing of its contract with BioSignia and within the context of IDMI and Life Line's reverse-engineering of BioSignia's KYN product, which is outside the scope of the IDMI Services Agreement. BioSignia alleges damages for the tort claim which are distinct from the damages sought for breach of contract. As such, the economic loss rule does not bar BioSignia's remaining tort claim against IDMI.[3]

---

[3] Again, the court notes that this case is still in its early stages and that no discovery has even taken place. At the summary judgment stage, IDMI may raise its arguments regarding the economic loss rule based on specific facts developed through discovery regarding BioSignia's claim that IDMI and Life Line reverse engineered BioSignia's product. *See In re MI Windows and Doors, Inc. Prods. Liability Litiga.*, Civ. No. 2:12-cv1258-DCN, 2012 WL 5471862, at * 4 n.2 (D.S.C. Nov. 9, 2012) (in denying motion to dismiss based on the economic loss rule in a product liability case, court stated "at this stage and under this standard of review, dismissal would not be appropriate.")

### B. Life Line's Motion for Judgment on the Pleadings

Life Line moved for a judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c) as to Plaintiff's UDTPA claim against Life Line. Life Line asserts that because the UDTPA claim is based "solely" on the agreement between the parties, it must be dismissed. (Life Line Reply at 2, Docket Entry 71.)

As discussed previously, under North Carolina law, "a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under [the UDTPA]." *Broussard*, 155 F.3d 331, 347. Plaintiff must "show substantial aggravating circumstances attending the breach [of contract] to recover under the [UDTPA], which allows for treble damages." *Bartolomeo v. S.B.Thomas, Inc.*, 889 F.2d 530, 535 (4th Cir. 1989).

Life Line contends that BioSignia's UDTPA claim against it is nothing more than a breach of contract claim and that BioSignia has not shown substantial aggravating circumstances accompanying the breach of contract to warrant imposition of liability under the UDTPA. While the substantial aggravating circumstances need not occur only in the formation of the contract, as argued by Life Line,[4] the court finds that as to Life Line, Plaintiff's UDTPA claim is based on the agreement between the parties. As noted by Life Line, all the conduct alleged by BioSignia arises from or relates to the agreement. Under the agreement, BioSignia retained ownership of its intellectual property and Life Line was required to maintain the confidentiality of BioSignia's information, including trade secrets.

---

[4] Several courts, including this one, have recognized that the substantial aggravating circumstances need not necessarily arise only in the formation of the contract but in fact may exist as a result of the "circumstances of its breach." *See, e.g., Booker v. Washington Mut. Bank F.A.*, No. 1:06cv274, 2007 WL 475330, at *5 (M.D.N.C. Feb. 9, 2007).

(*See* Am. Compl. ¶ 76.) Additionally, Life Line was prohibited from using BioSignia's trade secrets or other information to reverse engineer BioSignia's technology to develop a competitive product. (*Id.*)

A review of the allegations against Life Line in the fifth cause of action reveals that the claim is based on the contract between Life Line and BioSignia. Plaintiff asserts that Life Line obtained BioSignia trade secrets under false pretenses with the intent to develop and market a reverse engineered knockoff product, conduct which was clearly prohibited by the contract between the parties. Even an intentional breach, if it relates only to the parties' understanding of and performance under the contract, is not actionable under the UDTPA. *See Canady v. Crestar Mortg. Corp.*, 109 F.3d 969, 975 (4th Cir. 1997) (noting that even an intentional breach is not sufficient for liability to attach under the UDTPA). The intellectual property allegedly obtained by Life Line was obtained pursuant to the contract. In fact, absent the agreement, Life Line would not have been able to commit the alleged violations, such as providing the information it obtained to a third party and developing a knock off product. As such, because the acts alleged arise solely from the rights and obligations of the parties under the contract, Plaintiff has not stated a claim for a violation of the UDTPA as to Life Line and Life Line's motion for judgment on the pleadings should be granted.

## IV. CONCLUSION

For the reasons stated above, the Court finds Plaintiff's third, sixth and seventh causes of action as to IDMI sufficiently plausible to survive a motion to dismiss and IDMI's motion to dismiss these claims should be denied. As to the fourth cause of action against IDMI (breach of duty of good faith and fair dealing), the Court finds that this claim is

duplicative of the breach of contract cause of action and should be dismissed. Additionally, the fifth cause of action (UDTPA claim) as to IDMI should be dismissed for failure to state a claim. The Court further finds that Plaintiff has not stated a claim under the UDTPA as to Life Line, and Life Line's motion for judgment on the pleadings as to the UDTPA claim should be granted.[5]

ACCORDINGLY, **IT IS RECOMMENDED** as follows:

(1) IDMI's motion to dismiss (Docket Entry 57) should be **DENIED IN PART** and **GRANTED IN PART**; to wit, the motion should be denied as to the Third and Sixth Causes of Action and **GRANTED** as to the Fourth, Fifth and Seventh Causes of Action; and

(2) Life-Line's motion for judgment on the pleadings as to the UDTPA claim against it (Docket Entry 68) should be **GRANTED**.

_____
Joe. L. Webster
United States Magistrate Judge

Durham, North Carolina
June 30th, 2014

---

[5] This recommendation, if adopted by the district court, does not preclude Defendants from arguing, at a later stage, that BioSignia cannot satisfy the elements of its various claims so as to support a recovery under those claims. This recommendation merely holds that, at this stage of the proceeding, BioSignia has stated plausible claims for relief on its breach of contract and tortious interference with contract causes of action.

19